**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

JONATHAN P.C.,[1]

                    Plaintiff,

v.

MARTIN J. O'MALLEY,[2]
Commissioner of the Social Security Administration,

                    Defendant.

Case No. 3:23-cv-00106-SLG

## DECISION AND ORDER

On or about May 24, 2019, Jonathan P.C. ("Plaintiff") protectively filed applications

under Titles II and XVI of the Social Security Act,[3] with an alleged onset date of March 24,

2017.[4]  Plaintiff has exhausted his administrative remedies and filed a Complaint seeking

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Title II and Title XVI.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") A.R. 16, 118, 329, 337.  The application summaries, not the applications themselves, appear in the Court's record and are dated June 14, 2019.  A.R. 329, 337.  Pursuant to 20 C.F.R. §§416.340-350, a protective filing date establishes the earliest

relief from this Court.[5]  Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for the immediate payment of benefits, or in the alternative, for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[6]  The Commissioner filed the Administrative Record as his Answer and a Response Brief.[7]  Plaintiff filed a Reply Brief.[8]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9]  For the reasons discussed below, Plaintiff's request for relief at Docket 9 is GRANTED.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10]

---

possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits.  Therefore, May 24, 2019, is considered Plaintiff's application filing date.  A.R. 118.

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 9 (Plaintiff's Br.).

[7] Docket 8 (Notice of Lodging Admin. Record); Docket 11 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record."  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[8] Docket 12 (Reply).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

"Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[15] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16] Finally, the ALJ has a "special duty to fully and fairly develop

---

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

the record and to assure that the claimant's interests are considered."[17]  In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[18] However, this duty exists "even when the claimant is represented by counsel."[19]

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education,

---

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)), *superseded on other grounds by*  20 C.F.R. § 416.929(c)(3) and § 404.1529(c)(3); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[19] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

[20] 42 U.S.C. § 423(a).

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[28]  *The ALJ determined that Plaintiff had not engaged in SGA since March 24,*

---

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

*2017, the alleged onset date. The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023.*[29]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30] *The ALJ determined that Plaintiff had the following severe impairments: psoriatic spondylitis; obesity; stroke; and complex regional pain syndrome ("CRPS").*[31]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[32] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[33]

---

[29] A.R. 18.

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] A.R. 19.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 19.

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[34] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[35] *The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with the following limitations: frequently climbing stairs and ramps; occasionally climbing ladders, ropes, and scaffolds; occasionally stooping; frequently kneeling, crouching, and crawling; occasionally reaching with the left from shoulder-level and above; and avoiding even moderate exposure to industrial vibration and unprotected heights.*[36]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[37] Otherwise, the evaluation process moves to the fifth and final step.[38] *The ALJ determined that Plaintiff was unable to perform any past relevant work.*[39]

---

[34] 20 C.F.R. §§ 404.1545(a), 416.945(a).

[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[36] A.R. 19.

[37] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[39] A.R. 22.

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[40]

*The ALJ found that Plaintiff would have been able to perform occupations such as food and beverage order clerk (DOT #209.567-014, sedentary, SVP 2); document preparer (DOT #249.587-018, sedentary, SVP 2); and film touch-up inspector for printed circuit boards ("PCB inspector") (DOT #726.684-050, sedentary, SVP 2).[41]*

The ALJ concluded that Plaintiff was not disabled at any time from March 24, 2017, the alleged onset date, through December 27, 2022, the date of the ALJ's decision.[42]

### III.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 41 years old on the alleged disability date.[43] From the alleged onset date through the date of the ALJ's decision, he was considered "a younger individual" (age 18–49) by the Social Security Administration.[44] His past relevant work included work as a journeyman/plumber and meter repairer.[45]

---

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[41] A.R. 23.

[42] *Id.*

[43] A.R. 22, 329, 337.

[44] *See* 20 C.F.R. §§ 404.1563, 416.963.

[45] A.R. 22.

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 8 of 40

Plaintiff alleged disability due to psoriatic arthritis in his hands, back, knees, and shoulders.[46]  His alleged onset date of March 24, 2017 also coincided with the date of his motor vehicle accident.[47]  His claims were denied initially on October 28, 2019.[48]  On September 24, 2020, he appeared without representation and testified by telephone before ALJ Cecelia LaCara.[49]  The ALJ ended the hearing to allow Plaintiff time to obtain representation.[50]

In October 2020, Plaintiff was treated for an acute ischemic stroke with associated vertigo symptoms.[51]  Plaintiff again appeared without representation before ALJ LaCara and testified by telephone on January 28, 2021.[52]  In February 2021, Plaintiff was diagnosed with CRPS.[53]  The ALJ issued an unfavorable hearing decision dated June 1, 2021.[54]  The Appeals Council remanded the ALJ's decision because the January 28, 2021 hearing recording was "not fully audible."[55]

---

[46] A.R. 20, 103, 434.

[47] A.R. 20, 554–55.

[48] A.R. 113–14.

[49] The ALJ noted that the hearing was being held by telephone "due to community measures to stop the spread of the virus COVID-19."  A.R. 84.

[50] A.R. 91.

[51] A.R. 791.

[52] A.R. 59–62, 68–74.  The ALJ noted that the hearing was being held by telephone "due to community measures to stop the spread of the virus COVID-19."  A.R. 59.

[53] A.R. 991.

[54] A.R. 118–31.

[55] A.R. 138.

Represented by counsel, Plaintiff appeared and testified a third time by telephone before ALJ LaCara on September 9, 2022.[56] On December 27, 2022, the ALJ issued a second unfavorable ruling.[57] After the Appeals Council denied review on March 10, 2023, Plaintiff timely appealed to this Court.[58]

## IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff alleges that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom allegations. He also alleges the ALJ's weighing of the medical opinion evidence was not supported by substantial evidence in the record.[59] The Commissioner disagrees and urges the Court to affirm.[60]

### A.    Plaintiff's Subjective Symptom Testimony and Reports

Plaintiff asserts that the ALJ failed to provide specific, clear, and convincing reasons for rejecting his allegations about the impact of his impairments. Plaintiff provides several reasons: (1) to discount Plaintiff's symptom allegations, the ALJ referred to findings in her earlier decision that predated Plaintiff's stroke and onset of CRPS and failed to cite to any new evidence to support her reasoning in the new decision; (2) the ALJ's references to Plaintiff's social functioning, demeanor, and appearance at medical

---

[56] A.R. 39–48.

[57] A.R. 16–24.

[58] A.R. 1–6. Plaintiff filed his complaint on May 8, 2023. *See* Docket 1.

[59] Docket 9 at 4–20.

[60] Docket 11 at 2–10.

appointments do not undermine his allegations about the impact of his impairments on his physical functioning; (3) the ALJ's assertion that Plaintiff was non-compliant with treatment recommendations is inaccurate; (4) the ALJ's reference to Plaintiff's daily activities is not substantial evidence supporting her findings, particularly regarding Plaintiff's functioning after his stroke in October 2020; (5) the ALJ's finding that Plaintiff's stroke symptoms improved with treatment is not supported by substantial evidence; (6) the ALJ's finding that Plaintiff's allegations were out of proportion to the objective findings is not supported by substantial evidence; and (7) Plaintiff's work activity during the disability period does not undermine his subjective symptom allegations.[61]

Plaintiff initially claimed disability due to psoriatic spondylitis in his hands, back, knees, and shoulders.[62] In the function report completed in October 2019, he reported that flare ups of joint pain, tenderness, cramps and stiffness limited his ability to walk, stand, sit, kneel, bend, stoop, squat, crawl, climb, reach, reach overhead, hold objects, use his hands and tools, drive, write, concentrate, and perform some activities of daily living despite treatment.[63] He also reported getting his children ready for school, driving them to school, preparing meals, doing light housework, and parenting his children with his wife.[64]

---

[61] Docket 9 at 7–13.

[62] A.R. 20, 103, 434.

[63] A.R. 20, 123, 434–42.

[64] A.R. 435–38.

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 11 of 40

At Plaintiff's first complete hearing on January 28, 2021, he testified that he had nerve pain that was "too extreme to deal with" and that he could "hardly walk because of the pain that shoots through my foot and leg." He testified that he did not drive because of balance problems after his stroke in October 2020. He indicated that at the time of the hearing, he was focused on seeing his neurologist and had not engaged in physical therapy due to difficulties with transportation.[65]

At Plaintiff's September 9, 2022 hearing after remand, he testified that CRPS caused shooting pain in his right leg and that he required strong opiate medication to function. He testified that he could not concentrate more than 10 to 15 minutes without getting upset and agitated. Plaintiff stated that his CRPS was "crippling" and that he was "basically a vegetable." However, upon questioning by his attorney, Plaintiff was able to describe his functional limitations more specifically. He testified that he could reach in all directions with his right arm, but that he could not grab or lift while the right arm was extended. He testified that nerve pain in his right hand prevented him from holding a pencil and writing, but he was learning to use his left hand to compensate. He indicated that his focus was on controlling his CRPS, but that he still carried a diagnosis of psoriatic arthritis and took medication for it. He later testified that his "joints lock up from [his] arthritis." He also indicated that he needed to change positions frequently. Plaintiff testified that he had multiple side effects from his pain medications and continued to have fatigue and difficulties with sleep and paying attention.[66]

---

[65] A.R. 70–72.

[66] A.R. 42–45.

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 12 of 40

1.    *Legal Standards*

An ALJ's assessment of a claimant's symptoms has two steps.[67]  First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[68]  In the first step, the claimant need not "show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[69]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. This standard is "the most demanding required in Social Security cases."[70]  Yet, this does not mean an ALJ is required to "simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case."[71]

---

[67] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017), superseded on other grounds by 20 C.F.R. §404.1502(a).

[68] *Id.* (quoting *Garrison,* 759 F.3d at 1014–15)..

[69] *Garrison,* 759 F.3d at 1014 (internal citations and quotations omitted).

[70] *Trevizo,* 871 F.3d at 678.

[71] *Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022).

In this case, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described. The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were inconsistent with the medical evidence and other evidence in the record.[72]

Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, she was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations. The ALJ provided the following reasons: (1) Plaintiff's subjective complaints "do not reasonably align with his clinical presentation"; (2) Plaintiff's "hesitance to pursue medical treatment reasonably directed to improve his symptoms suggests he felt capable of enduring his symptoms on his own"; (3) Plaintiff's stroke symptoms and new complaints of chronic pain improved with treatment; and (4) Plaintiff's activities suggest less limitation than Plaintiff alleges.[73]

2. *Clinical Observations and Demeanor*

In assessing Plaintiff's subjective symptom testimony, the ALJ may consider inconsistencies between a claimant's testimony and the treatment record.[74] A determination that a claimant's subjective complaints are inconsistent with clinical observations can provide a clear and convincing reason for discrediting a claimant's testimony where the ALJ specifies how Plaintiff's particular complaints are contradicted

---

[72] A.R. 20.

[73] A.R. 20–21.

[74] *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014).

by the clinical observations.  But this reasoning is insufficient where "the ALJ d[oes] not specify what complaints are contradicted by what clinical observations."[75]

Here, the ALJ found that Plaintiff's subjective complaints did not "reasonably align" with his clinical presentation because Plaintiff demonstrated the ability to ambulate effectively without deficits in motor function or strength.[76]  The ALJ cited her previous decision that listed examples of normal motor function, normal range of motion, a normal gait, and other "normal" presentations.[77]  However, "one does not need to be utterly incapacitated in order to be disabled" and "activities such as walking ... are not necessarily transferable to the work setting with regard to the impact of pain."[78]

The ALJ did not explain how Plaintiff's ability to ambulate with normal motor function and strength in a doctor's examination room was probative of Plaintiff's ability to sit for extended periods of time and stand or walk occasionally during an eight-hour workday.  Moreover, the examples cited by the ALJ in her previous decision as demonstrating "fair balance but antalgic to normal gait" include only one record in which Plaintiff demonstrated the ability to ambulate without an antalgic gait.[79]  Instead, most of the cited records show Plaintiff presented with an antalgic gait or mildly antalgic gait.[80]

---

[75] *Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1297 (9th Cir. 1999) (citing *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995) (*superseded on other grounds by regulation as stated in Farlow v. Kijakazi,* 53 F.4th 485, 488 (9th Cir. 2022)).

[76] A.R. 21.

[77] *See* A.R. 125.

[78] *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) (internal citations and quotations omitted).

[79] A.R. 728–29.

[80] A.R. 983, 986, 991, 998, 1021.

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 15 of 40

Case 3:23-cv-00106-SLG   Document 13   Filed 03/04/24   Page 15 of 40

The hospital records cited by the ALJ show that Plaintiff "demonstrated gait instability, vertigo after presenting with acute ischemic stroke" and that he engaged in physical therapy while hospitalized to address gait, balance, and vertigo symptoms.[81]

The ALJ also discounted Plaintiff's symptom testimony and reports because Plaintiff's "social functioning and demeanor do not appear to have suffered from his recurring pain symptoms" and "[t]reatment providers repeatedly described [Plaintiff] as comfortable, pleasant, well-appearing, and in no acute distress."[82] First, these generalized statements do not refer to the specific testimony the ALJ is discounting. Therefore, this reason does not meet the Ninth Circuit's "specific, clear and convincing" standard.[83] Moreover, the ALJ's discounting of Plaintiff's pain testimony because he was observed to be pleasant and in no acute distress implies that "a claimant need not be believed unless [he] acted in an agitated and disagreeable manner, an anomalous result."[84] And, while an ALJ may consider a lack of acute distress when assessing a claimant's symptom allegations, the ALJ must also consider the record as a whole and may not cherry-pick evidence to show a claimant is not disabled.[85]

For example, the ALJ cited to multiple records in her previous decision to demonstrate Plaintiff's pleasant and well-appearing demeanor and observations that he

---

[81] A.R. 793–94, 800, 803–04.

[82] A.R. 21.

[83] *Smartt,* 53 F. 4th at 494–95 (internal quotations and citations omitted).

[84] *Childress v. Colvin,* Case No. 13-cv-03252-JSC, 2014 WL 4629593, at *13 (N.D. Cal. Sep. 16, 2014).

[85] *Holohan v. Massanari,* 246 F.3d 1195, 1207 (9th Cir. 2001).

was "in no acute distress" at medical appointments.[86]  However, in one cited record, although Plaintiff was in no acute distress, he appeared "uncomfortable" because of an "acute fracture of the anteromedial aspect of the talus" (broken ankle) and "[e]xtensive soft tissue swelling."[87]  In another record, Plaintiff was in "no acute distress," yet the provider also observed that Plaintiff's range of motion was markedly decreased and he could "barely move about the room."[88]  In other records cited by the ALJ, Plaintiff demonstrated marked pain and marked decrease in range of motion in the neck, left shoulder, knees, ankles, hands, and hips.[89]  Moreover, recent Ninth Circuit district court decisions have held that "it is questionable whether a chart note of 'no acute distress' is relevant to allegations of chronic symptoms."[90]

---

[86] A.R. 125–26.

[87] A.R. 694.  The talus bone meets the tibia and fibula to form the ankle joint.  *See* https://my.clevelandclinic.org/health/body/23416-talus-bone.

[88] A.R. 978 (marked decreased range of motion, patient can barely move about the room).

[89] *E.g.,* A.R. 643 (marked left shoulder pain with abduction or rotation), 645 (knee swollen, but not red or warm), 647 (right knee pain), 650 (marked decrease in range of motion of neck, bilateral shoulder pain with abduction and rotation with positive bilateral grind test), 651–52 (constant knee and hip pain, started in ankles), 654–55 (continues to suffer with psoriatic arthritis), 658–59 (knee pain, medications not controlling), 686 (left ankle pain), 720–21 (arthritis flare with increased hip and shoulder pain), 722–23 (chronic left shoulder pain preventing work and sleep), 733 (significantly limited range of motion in left shoulder), 740 (psoriatic arthritis flare with left shoulder pain), 745 (increasing shoulder pain at night following surgery), 748 (left shoulder pain), 753 (psoriatic arthritis flare, unable to open and close hands and sacroiliac joint), 757 (pre-op for left shoulder surgery), 784 (too dizzy and nauseated to sit up), 800 (vertigo), 964 (temperature intolerance, joint pain reported), 990–991, 998, 1020–22 (mildly antalgic gait, limited range of motion in all directions in cervical spine secondary to pain and stiffness, diminished sensation in first and second digits, positive spurling's test with radicular symptoms down C4-5 dermatome, positive compression bilaterally of cervical spine).

[90] *See e.g., Troy A.H. v. Comm'r of Soc. Sec.,* Case No. 13-cv-03252-JSC, 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022)*; Mitchell v. Saul,* Case No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings

Finally, the ALJ's evaluation ignores the unique symptoms of Plaintiff's CRPS and the SSA's guidance provided in SSR 03-2p.[91] According to SSR 03-2p, symptoms of CRPS include a degree of pain "out of proportion to the severity of the injury sustained by the individual." Symptoms do not always "present continuously." SSR 03-2p also warns adjudicators that "[t]ransient findings are characteristic of CRPS[.]"[92]

---

regarding Plaintiff's chronic conditions."), *report and recommendation adopted sub nom. Mitchell v. Berryhill,* 2020 WL 1017899 (D. Nev. Feb. 28, 2020); *Richard F. v. Comm'r of Soc. Sec,* Case No. C19-5220-JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony . . . 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute.") (citation to the administrative record omitted).

[91] *See Carrillo v. Kijakazi,* No. 1:21-cv-01211-SKO, 2023 WL 131125, at *7 (E.D. Cal. Jan. 9, 2023), *citing Pettingill v. Saul,* No. 2:18-CV-2979-EFB, 2020 WL 2404616, at *6 (E.D. Cal. May 12, 2020) (finding the ALJ erred in failing to evaluate the plaintiff's CRPS under SSR 03-2p where the evaluation was "based on cherry-picking only notations reflecting a positive response to medication" while "ignor[ing] the portions of the same medical records reflecting ongoing pain that impaired plaintiff's ability to perform daily activities[.]"); *Parks v. Berryhill,* No. 1:15-CV-01603-BAM, 2017 WL 908616, at *7 (E.D. Cal. Mar. 8, 2017) ("[I]t was error for the ALJ to ignore the [ ] CRPS diagnos[is] and the objective evidence supporting [it] in light of SSR 03–02p.") (citing *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984) (An ALJ may not "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.")). *See also Taffy D. v. Comm'r of Soc. Sec.,* No. C21-5146-MLP, 2021 WL 4988717, at *3 (W.D. Wash. Oct. 27, 2021); ("[N]ormal lower extremity strength and sensation ... is not inconsistent with CRPS per SSR 03-2p, as objective findings of CRPS are of a 'transitory nature[.]'") (quoting SSR 03-2p at *4–5)); *Deborah M. v. Berryhill,* No. 19-cv-01901-DMR, 2020 WL 7625483, at *6 ("Because clinical findings are of limited value with respect to CRPS, SSR 03-2p emphasizes that the severity of the disorder can be assessed instead through 'a longitudinal clinical record containing detailed medical observations, treatment, the individual's response to treatment, complications of treatment, and a detailed description of how the impairment limits the individual's ability to function and perform or sustain work activity over time.'") (quoting SSR 03-2p at *5)); *Hunt v. Astrue,* No. EDCV08-00299-MAN, 2009 WL 1519543, at *5 (noting that "CRPS is a disease diagnosed primarily based on subjective complaints" and may not necessarily be supported by evidence such as x-rays or laboratory tests).

[92] Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome, SSR 03-2p, 2003 WL 22399117, at *4 (S.S.A. Oct. 20, 2023). Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. *Bunnell v. Sullivan,* 947 F.2d 341, 346 n. 3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference

In sum, the ALJ did not provide specific, clear, or convincing reasons for discounting Plaintiff's pain complaints based on clinical observations.

### 3. Non-Compliance with Treatment Recommendations

Plaintiff alleges that the physical therapy notes from 2020 related only to Plaintiff's left shoulder impairment and should only discount his allegations related to that impairment. He asserts that the ALJ made no inquiry into Plaintiff's attempts, if any, at seeking financial assistance for his physical therapy appointments.[93] The Commissioner counters that the evidence shows Plaintiff was not compliant with treatment recommendations and the ALJ reasonably discounted his allegations of disability on that basis.[94]

A claimant's decision not to seek further treatment or follow through on recommended treatment, such as physical therapy, may amount to substantial evidence in support of an ALJ's determination that the claimant's pain is not as severe as alleged.[95] However, if a claimant provides evidence of a good reason, the claimant's failure to follow

---

"unless they are plainly erroneous or inconsistent with the Act or regulations." *Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir. 1989); *see Orn v. Astrue,* 495 F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are "binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases[.]").

[93] Docket 9 at 8. The Appeals Council remanded the ALJ's decision issued on June 1, 2021 because the January 28, 2021 hearing was not fully audible. A.R. 138. The Court's transcript of the January 28, 2021 does not appear to have any specific testimony by Plaintiff that he could not afford physical therapy after surgery on his left shoulder. A.R. 59–80.

[94] Docket 11 at 4.

[95] *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005).

through on recommended treatment is not a clear and convincing reason to discredit his testimony.[96]

In this case, the ALJ discounted Plaintiff's symptom complaints because Plaintiff "opted not to attend physical therapy in early 2020 or to take prescribed pain medication." The ALJ concluded that this "hesitance to pursue medical treatment" suggested Plaintiff "felt capable of enduring his symptoms on his own."[97]  In the ALJ's earlier decision, the ALJ noted that while Plaintiff alleged an inability to afford physical therapy, Plaintiff did not provide evidence that he "made effort to seek state assistance or charity care to cover the medical expenses for the allegedly disabling symptoms."[98]

The records cited by the ALJ show that after left shoulder surgery, Plaintiff was scheduled for physical therapy from November 2019 through February 2020.  It appears that Plaintiff attended sessions on November 15, 20, 22, 27, 2019 and December 4 and 27, 2019.[99]  On December 18, 2019, Plaintiff acknowledged that he had canceled or no-showed for at least four scheduled physical therapy appointments in December 2019.  He also reported that he re-injured his left shoulder the day before the appointment and felt pain every time he moved it.[100]  At his appointments on February 5 and 24, 2020, Plaintiff

---

[96] *Smolen,* 80 F.3d at 1284.

[97] A.R. 21.

[98] A.R. 127.  *See* SSR 82-59, 1982 WL 31384, at *4 ("Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community.  All possible resources (e.g. clinics, charitable and public assistance agencies, etc.), must be explored.").

[99] A.R. 750.

[100] A.R. 748.

indicated that he missed physical therapy appointments for his left shoulder due to flare ups of his psoriatic arthritis. He also explained that due to a change in insurance, his rheumatologist was out of his insurance network.[101] The Court's record does not show that Plaintiff claimed he could not afford his physical therapy appointments nor does it appear that the ALJ inquired whether or how Plaintiff sought financial assistance.[102]

Plaintiff's flare ups of psoriatic arthritis and a change of insurance resulting in his rheumatology physician being out of his insurance network, are sufficient to justify Plaintiff's failure to attend all of his physical therapy appointments after his left shoulder surgery. Moreover, as Plaintiff alludes, the ALJ did not determine that the prescribed physical therapy for Plaintiff's left shoulder would have restored Plaintiff's ability to work.[103]

The ALJ also discounted Plaintiff's pain complaints because Plaintiff had "opted not . . . to take prescribed pain medication."[104] The ALJ pointed to a single treatment note from December 18, 2019 as evidence. In this treatment note, the provider stated, "[Plaintiff] is no longer taking any narcotic pain medication." In the same treatment note, the provider wrote, "I will provide him with a refill of his Norco pain medication."[105] Without

---

[101] A.R. 740–41.

[102] *See supra,* n. 93..

[103] SSR 82-59, 1982 WL 31384, at *2 (Treatment prescribed by a claimant's treating source must be expected to restore the ability to work for a failure to follow prescribed treatment to arise. The SSA determines whether the prescribed treatment can be expected to restore the ability to work.).

[104] A.R. 21.

[105] A.R. 748.

more information, the treatment note appears to indicate that Plaintiff had run out of his narcotic pain medication and was requesting a refill at that appointment. It does not show a "hesitance to pursue medical treatment reasonably directed to improve his symptoms" as the ALJ concluded.[106]

In sum, the ALJ's determination that the claimant's pain is not as severe as alleged because of Plaintiff's failure to complete his physical therapy appointments after left shoulder surgery or to take prescribed pain medication is not a specific, clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.

### 4.    *Improvement with Treatment*

Plaintiff alleges the ALJ's determination that Plaintiff's symptoms improved with treatment after he suffered a stroke in October 2020 was not based on an accurate portrayal of the record evidence.[107] "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."[108] At the same time, symptom improvement must be evaluated in the context of the "overall diagnostic picture[.]"[109]

Here, the ALJ found that Plaintiff's right-sided weakness improved "when he did finally engage in physical therapy in early 2021." The ALJ also concluded that Plaintiff's chronic pain symptoms "abated with rest and prescribed medications" and "after nerve

---

[106] A.R. 21.

[107] Docket 9 at 10–11.

[108] *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017).

[109] *Holohan,* 246 F.3d at 1205.

blocks and lidocaine injections [Plaintiff]'s treatment providers reported no gait disturbance whatsoever."[110]

However, "there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]"[111] In this case, the treatment records from Dr. Liu's office noted some improvement in Plaintiff's pain through medication, nerve blocks and injections, and physical therapy, but not to any level of significant control.[112]

In sum, the ALJ's examples of Plaintiff's general improvement after his stroke in October 2020 were not sufficiently specific, clear, or convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.[113]

### 5. Daily Activities and Work Attempt

Plaintiff asserts that his ability to perform limited daily activities at the time of his application was not a specific, clear and convincing reason to discount his symptom allegations.[114] He also asserts that his unsuccessful attempt to work for a short time prior to applying for disability was not inconsistent with his symptom complaints.[115]

---

[110] A.R. 21.

[111] *Garrison,* 759 F.3d at 1017 n.23 (internal quotations and citation omitted).

[112] *See e.g.,* A.R. 988–91, 996–98, 1002–05, 1019–22, 1026–29, 1054, 1057–58, 1070, 1075, 1080, 1085, 1090, 1100, 1106, 1128, 1133, 1142, 1152, 1168, 1184, 1204–05.

[113] *Smartt,* 53 F.4th at 499–500.

[114] Docket 9 at 9.

[115] Docket 9 at 12–13.

An ALJ may discount a claimant's symptom testimony when (1) daily activities demonstrate an inconsistency between what the claimant can do, and the degree of disability alleged;[116] or (2) the "claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."[117] At the same time, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."[118]

Here, the ALJ again referenced her earlier decision and found that Plaintiff's reported daily activities, including cooking, performing household chores, and homeschooling[119] his children, "suggests he remains quite capable despite his recurring physical discomfort."[120] However, the ALJ did not explain how Plaintiff's limited household activities, reported in October 2019, were inconsistent with Plaintiff's testimony about his pain.[121] Moreover, the ALJ did not view these activities in the context of Plaintiff's medical

---

[116] *Burrell v. Colvin,* 775 F.3d 1133, 1137–38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination").

[117] *Ghanim,* 763 F.3d at 1165.

[118] *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1988).

[119] Although Plaintiff stated in one treatment record that he "home schools his children," he later clarified that he was helping his two children, ages 13 and 14, with *virtual school* at the time of his stroke in October 2020. A.R. 793, 797.

[120] A.R. 21.

[121] *See Garrison,* 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

complications after October 2020.[122]  In particular, Plaintiff testified that, after his stroke in October 2020 and CRPS diagnosis, he spent his day watching television and researching CRPS.  He testified that he could not vacuum or do the dishes.  He indicated that his CRPS prevented him from taking a shower because the water temperature, unless in a specific range, was too painful.[123]

A claimant's unsuccessful work attempt can weigh in favor of a disability finding.[124] In the ALJ's first decision on June 1, 2021, she concluded that Plaintiff's work in the 3rd and 4th quarters of 2018 was an unsuccessful work attempt.[125]  In the same decision, the ALJ then discounted Plaintiff's "allegations of disability" because they were "inconsistent with his work activity in a competitive work environment" and his ability to "engage in SGA in spite of his conditions."[126]  The ALJ also discounted testifying medical expert Charles Cooke, M.D.'s opinion, in part, because of Plaintiff's "work activities in the last two quarters of 2018."[127]  In the ALJ's second decision, at issue here, she also concluded that

---

[122] *Holohan,* 246 F.3d at 1207 (the ALJ must consider the record as a whole and may not cherry-pick evidence to show a claimant is not disabled).

[123] A.R. 46–47.

[124] *Lingenfelter v. Astrue,* 504 F.3d 1028, 1039 (9th Cir. 2007) ("[I]f working for almost nine months is not evidence that a disability benefit recipient is no longer disabled, then a nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairments.").

[125] A.R. 121.

[126] A.R. 127.

[127] A.R. 128.

Plaintiff's work in 2018 was an unsuccessful work attempt.[128]  However, the ALJ did not cite Plaintiff's 2018 work attempt as a reason for discounting his symptom testimony.[129]

To the extent the ALJ discounted Plaintiff's testimony regarding his pain based on two quarters of work activity in 2018, this reason alone is not specific, clear and convincing.

Therefore, the ALJ failed to provide a specific, clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's pain testimony based on inconsistent daily activities.

## B.    Medical Opinion Evidence

Plaintiff alleges that the ALJ did not adequately evaluate the persuasiveness of the medical opinions of record.  Specifically, he asserts that the ALJ's analysis of the medical opinions of Charles L. Cooke, M.D., Jamie Lytton, P.A.C., Pebbles Shanley, M.D., and Roy Brown, M.D. was not supported by substantial evidence.[130]  Because Plaintiff protectively filed his applications on or about May 24, 2019, the regulations that became effective on March 27, 2017, governing the evaluation of medical evidence are applicable here.

### 1.    Legal Standard

Under the revised regulations, the definition of what constitutes a medical opinion has been narrowed, focusing on what the claimant can do despite his impairments and

---

[128] A.R. 18–19.

[129] A.R. 20–21.

[130] Docket 9 at 13–19.

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 26 of 40

what work-related limitations are present.[131]  The new regulations define a medical

opinion as follows:

> A medical opinion is a statement from a medical source about what you can
> still do despite your impairment(s) and whether you have one or more
> impairment-related limitations or restrictions in the following abilities:
>
> (i)    Your ability to perform physical demands of work activities, such as
>        sitting, standing, walking, lifting, carrying, pushing, pulling, or other
>        physical functions (including manipulative or postural functions, such
>        as reaching, handling, stooping, or crouching);
>
> (ii)   Your ability to perform mental demands of work activities, such as
>        understanding;     remembering;     maintaining     concentration,
>        persistence, or pace; carrying out instructions; or responding
>        appropriately to supervision, co-workers, or work pressures in a work
>        setting;
>
> (iii)  Your ability to perform other demands of work, such as seeing,
>        hearing, or using other senses; and
>
> (iv)   Your ability to adapt to environmental conditions, such as
>        temperature or fumes.[132]

The revised regulations further provide that the ALJ no longer gives any particular

weight to a medical opinion based on its source, thereby eliminating the treating source

rule.[133]  Instead, the ALJ considers the persuasiveness of a medical opinion based on five

factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including

---

[131] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

[132] 20 C.F.R. § 404.1513(a)(2).

[133] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01
(Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for
claims filed on or after March 27, 2017).

length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[134]

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[135] Supportability and consistency are explained as follows in the regulations:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[136]

Generally, these are the only two factors the ALJ is required to address in her decision.[137] However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[138] In the Ninth Circuit, the current regulatory framework no

---

[134] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

[135] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).

[136] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[137] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[138] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

longer requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[139]

2. *Medical Opinion of Testifying Expert Charles L. Cooke, M.D.*

Charles L. Cooke, M.D., testified at Plaintiff's hearing on January 28, 2021. He testified that he was board certified in internal medicine and rheumatology. Dr. Cooke testified that Plaintiff's psoriasis in the joints was "a very significant problem with [Plaintiff.]" He reviewed the medical evidence of Plaintiff's left shoulder, lumbar sacral spine, fibula, and stroke. He then opined that Plaintiff would meet Section 1.02 in the "Listings" because "one major joint in each of [the] upper extremities" resulted in Plaintiff's "inability to form fine and gross movements" and because Plaintiff had undergone surgical procedures "which did not help a great deal." He then stated, "so given these problems I don't see how the man could work 40 hours." Upon further questioning by the ALJ, Dr. Cooke clarified that it was his expert opinion that the medical record supported Plaintiff meeting Listing 1.02 as of the alleged onset date of March 24, 2017. Dr. Cooke also clarified that, because of Plaintiff's relatively young age, a future medical record review would be appropriate in the event the ALJ granted disability.[140]

Plaintiff asserts that the ALJ failed to develop the record by neglecting to clarify Dr. Cooke's testimony at the hearing.[141] However, this Court is confined to reviewing the

---

[139] *Woods v. Kijakazi,* 32 F.4th 785 (9th Cir. 2022).

[140] A.R. 63–67.

[141] Docket 9 at 16–17.

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 29 of 40

x

x

reasons the ALJ asserts.[142]  In this case, the ALJ provided several reasons for finding Dr. Cooke's hearing testimony unpersuasive.  First, the ALJ concluded that Dr. Cooke's opinion was "not fully substantiated by the physical examination[s] and diagnostics" and longitudinal health treatment history.  The ALJ also found Dr. Cooke's testimony was not consistent with Plaintiff's presentations at appointments and examinations, statements about improvement with treatment, and documented daily activities.[143]

a.    The Longitudinal Record

The records cited by the ALJ as inconsistent with Plaintiff's longitudinal health treatment history primarily document Plaintiff's right knee and left shoulder surgeries and the physical therapy appointments following shoulder surgery.[144]  But the ALJ did not explain how these records undermined Dr. Cooke's opinion that Plaintiff met Listing 1.02.[145]  This alone constitutes error because the ALJ failed to "set forth [her] own interpretations and explain why they, rather than the doctors', are correct."[146]  And, as with the ALJ's analysis of Plaintiff's pain testimony, the ALJ's discounting of Dr. Cooke's medical opinion as inconsistent with Plaintiff's presentations, improvement with treatment, and daily activities is also not supported by the medical record, for the reasons discussed above.

---

[142] *Brown-Hunter,* 806 F.3d at 494 ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

[143] A.R. 128.

[144] *See e.g.,* A.R. 513, 554, 597, 640, 744, 746, 752, 756.

[145] A.R. 66.

[146] *See Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir. 1988).

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 30 of 40

b.      *Dr. Cooke's Listing Opinion*

Dr. Cooke testified that Plaintiff met Listing 1.02 and provided examples from the medical record in support of his conclusion.  Specifically, he testified that Plaintiff met Listing 1.02 because "one major joint in each of [the] upper extremities" resulted in Plaintiff's "inability to form fine and gross movements" and because Plaintiff had undergone surgical procedures "which did not help a great deal."[147]  Listing 1.02 states the following:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.  Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B.  Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.[148]

Although the claimant bears the burden of proof at step three of the sequential process, the ALJ is still required to discuss and evaluate the evidence before concluding that the claimant failed to meet or equal a listing.[149]  However, the ALJ is not required to

---

[147] A.R. 66.

[148] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02.

[149] *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative

"state why a claimant failed to satisfy every different section of the listing of impairments."[150]  At the same time, "an ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."[151]

Here, the ALJ stated that she considered Listings 1.18, 11.04, and 14.09, but did not provide any reasoning.[152]  The ALJ did not consider or discuss Listing 1.02 in either the June 2021 or December 2022 decision.  The ALJ did not discuss Dr. Cooke's listing opinion in either decision.[153]

Although the Court is not qualified to draw inferences from medical data,[154] the objective medical evidence of Plaintiff's left shoulder, right knee, lumbar sacral spine, and stroke impairments, that Dr. Cooke relied on for his opinion, is sufficient to warrant a discussion of Listing 1.02.[155]  Moreover, the ALJ rejected Dr. Cooke's listing opinion by ignoring it.  Consequently, the ALJ's lack of any discussion of the applicability of Listing

---

tests and the combined effects of the impairments.").

[150] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

[151] *Garrison,* 759 F.3d at 1012–13.

[152] A.R. 19.

[153] A.R. 16–24, 118–131.

[154] *See Decker v. Berryhill,* 856 F.3d 659, 665 (9th Cir. 2017) (commenting that district courts are not qualified to interpret raw medical data).

[155] *See* A.R. 20, 123–27.

1.02, particularly in the context of Dr. Cooke's opinion that the listing applied, was also error.[156]

In sum, the ALJ's finding that Dr. Cooke's testimony was "not entirely persuasive," is not supported by substantial evidence.

### 3. Medical Opinion of Jamie Lytton, PA-C

On August 9, 2022, Plaintiff's provider, Jamie Lytton, PA-C, completed an attorney-provided work restrictions questionnaire. PA Lytton opined that from February 2, 2021 going forward, Plaintiff's stroke sequelae, psoriatic arthritis, cervicalgia, and CRPS would limit him to working two hours per day for two days a week. She also opined that Plaintiff could stand and/or walk for 40 minutes and sit for four hours in an eight-hour workday, could lift and carry 50 pounds for 1/3 of a workday and up to 10 pounds for 2/3rds of a workday, and was limited to handling and fingering with the right hand for only 10% of a workday. She opined that Plaintiff would miss work 15 times per month even in a two-day work week, due to mental exhaustion.[157]

---

[156] *See e.g., Bryant v. Colvin,* No. 2:14-cv-1934-KJN, 2016 WL 454788, at *6 (E.D. Cal. Feb. 5, 2016) (The district court found that the ALJ should have considered and specifically discussed whether plaintiff's impairment met or equaled the requirements of Listing 1.02 given the opinion and medical evidence in the record and the ALJ's determination that certain of plaintiff's lower extremity impairments were severe); *Jeremiah F. v. Kijakazi,* No. 2:20-cv-00367-SAB, 2021 WL 4071863, at *10–12 (E.D. Wash. Sept. 7, 2021) (The district court found that the ALJ failed to conduct a reasonable evaluation of the evidence in determining whether the claimant met listings.); *T.J. v. Saul,* No. 19-cv-06516-LB, 2020 WL 7664464 at * 23 (N.D. Cal. Dec. 21, 2020) ("As discussed above, the ALJ misweighed the medical opinion [evidence]. This affects the step-three determination. The ALJ thus erred here too."); *Mitchell v. Saul,* No. 19-cv-03249-JSC, 2020 WL 4226518 at * 12 (N.D. Cal. July 23, 2020) ("Because the ALJ neglected to consider the opinions of [two doctors] regarding Plaintiff's mental health and PTSD, it follows that the ALJ failed to properly evaluate the medical evidence in determining that Plaintiff did not suffer any impairment under these Listings.").

[157] A.R. 1262–63.

The ALJ found PA Lytton's opinion "moderately persuasive." Specifically, the ALJ agreed that PA Lytton's standing and walking restrictions were "reasonably justified to address [Plaintiff]'s chronic pain symptoms." At the same time, the ALJ discounted PA Lytton's opinions as "not entirely consistent with contemporaneous treatment notes" because Plaintiff's primary care doctor observed in August 2022 that Plaintiff presented in mild distress, but also presented with a normal range of motion, strength, and gait.[158]

Internal inconsistencies are a valid reason to accord less weight to a medical opinion.[159] However, in this case, the ALJ's presentation of the August 2022 record is not accurate because the cited record is ambiguous. Under musculoskeletal, the record notes that Plaintiff presented with normal range of motion, normal strength, and normal gait; but under neurologic, several lines down, the same record states that Plaintiff's gait was antalgic with allodynia on the right side.[160] And, it appears that Plaintiff's purpose for the appointment was to address a persistent sinus infection and to request the completion of disability paperwork, not to address Plaintiff's CRPS, psoriatic arthritis, or other diagnoses.[161]

---

[158] A.R. 21.

[159] *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (upholding inconsistency between a treating physician's opinions and his own treatment notes as a reason to discount the physician's medical opinion).

[160] Allodynia is a type of neuropathic pain that causes sensitivity to touch and can be caused by CRPS. *See* https://my.clevelandclinic.org/health/symptoms/21570-allodynia.

[161] A.R. 1250.

Case No. 3:23-cv-00106-SLG, *Jonathan P.C. v. O'Malley*
Decision and Order
Page 34 of 40

Because the ALJ provided only one reason for discounting PA Lytton's opinions and the cited record is ambiguous on that point, the ALJ's conclusion is not supported by substantial evidence in the record.

### 4. Medical Opinion of Pebbles Shanley, M.D.

On August 16, 2022, Plaintiff's primary care physician, Pebbles Shanley, M.D., completed an attorney-provided work restrictions questionnaire. She opined that Plaintiff could work for three hours a day for three days a week. She also opined that Plaintiff could stand and/or walk less than one hour and sit for no more than one hour in an eight-hour workday. Dr. Shanley opined that Plaintiff could not lift and carry due to pain, and that he was limited to fine manipulation with the right hand for 20% and gross manipulation with the right hand for 10% of an eight-hour weekday. She opined that Plaintiff would be absent from work 15 days each month because of "uncontrolled severe pain interfering with all daily life and care."[162]

The ALJ found Dr. Shaley's functional assessment unpersuasive "for the same reasons cited above for [PA] Lytton's opinion[.]" The ALJ then noted that Dr. Shaley opined that Plaintiff was only able to stand, walk, and sit for a combined total of two hours in a workday. But at the same time, Dr. Shaley opined that Plaintiff could work three hours a day. The ALJ found this to be internally inconsistent.[163]

However, the internal conflict in this opinion would not change Dr. Shaley's overall opinion. Regardless of whether Dr. Shaley opined that Plaintiff could work for two hours

---

[162] A.R. 1265–66.

[163] A.R. 22.

Case 3:23-cv-00106-SLG   Document 13   Filed 03/04/24   Page 35 of 40

or three hours in an eight-hour workday, she did not believe that Plaintiff could work a full eight-hour workday. Moreover, this opinion is consistent with PA Lytton's and Dr. Cooke's opinions.[164]

Therefore, the ALJ's conclusion, that Dr. Shaley's assessment was not persuasive "for the same reasons cited above for Ms. Lytton's opinion" and because it was "internally inconsistent," is not supported by substantial evidence in the record.

### 5.  *Medical Opinion of Roy Brown, M.D.*

In October 2019, state agency reviewer Roy Brown, M.D., opined that Plaintiff could sit (with normal breaks) for six hours in an eight-hour workday; frequently climb stairs and ramps; occasionally climb ladders, ropes, and scaffolds; frequently kneel, crouch, and crawl; frequently reach with left upper extremity; and occasionally reach overhead on the left.[165] The ALJ's RFC further limited Plaintiff to sedentary work with occasional stooping due to obesity and impairments of the left shoulder and right knee. The ALJ also limited Plaintiff to avoiding moderate exposure to excessive vibration and unprotected heights due to "balance and vertiginous issues" for a period after his stroke and the effects of medications. The ALJ found Dr. Brown's opinion consistent with Plaintiff's longitudinal health treatment record, objective findings, presentations at appointments and examinations, statements about improvement with treatment, and daily activities.[166]

---

[164] A.R. 63–67, 1262–63.

[165] A.R. 98–99.

[166] A.R. 127–28.

The ALJ's reasons for finding Dr. Brown's opinion persuasive are not supported by substantial evidence. Dr. Brown's opinion does not reflect the longitudinal record. It was rendered over a year before Dr. Cooke's opinion and over two and one-half years before Plaintiff's medical providers' opinions. Moreover, the last evidence Dr. Brown reviewed was a treatment record dated August 2019, two months before his opinion. In that treatment record, Plaintiff reported significant left shoulder pain and was observed to have very limited range of motion in the left shoulder with pops and grinds and marked pain with abduction/rotation.[167] Further, the ALJ's determination that Dr. Brown's opinion was consistent with objective findings, presentations at appointments and examinations, statements about improvement with treatment, and daily activities, is not supported by substantial evidence for the same reasons the ALJ's analysis of Plaintiff's pain testimony is unsupported.

## C.    Scope of Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.[168] When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[169] To determine which type of remand is appropriate, the

---

[167] A.R. 100, 106–07.

[168] *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion").

[169] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

court follows a three-step analysis.[170]  Under the credit-as-true rule, in order to remand for payment of benefits, a court must conclude: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[171]

However, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[172]

In this case, remanding for the immediate payment of benefits is appropriate.  As shown above, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Plaintiff's symptom testimony and provided legally insufficient reasons for discounting the medical opinions of Dr. Cooke, PA Lytton, and Dr. Shaley.

Second, the record has been fully developed and further administrative proceedings would serve no useful purpose.  Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under [the] credit-

---

[170] *Garrison*, 759 F.3d at 1020.

[171] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (internal citations and quotations omitted).

[172] *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021).

as-true analysis."[173]  Moreover, further proceedings are only necessary when there are significant factual conflicts between the rejected testimony and the objective medical evidence, such that the record is "uncertain and ambiguous[.]"[174]  Here, the record as a whole is not uncertain or ambiguous.[175]  Accordingly, the Court concludes the record is fully developed and further proceedings would serve no useful purpose.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  Plaintiff's providers and the testifying medical expert opined that his impairments would substantially interfere with his ability to work on a regular and sustained basis and that he would miss work 15 days per month due to his impairments.[176]  The vocational expert testified that if Plaintiff were limited to occasional fingering and handling due to his limitations, he would not be able to perform even sedentary work.[177]  Plaintiff has satisfied the requirements of the credit-as-true standard.

Even when all three credit-as-true criteria are met, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the

---

[173] *Garrison,* 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")  (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

[174] *Treichler,* 775 F.3d at 1107.

[175] Docket 8.

[176] A.R. 63–67, 1262–63, 1265–66.

[177] A.R. 54–55.

claimant is, in fact, disabled[.]"[178]  This Court's review of the record as a whole does not create a serious doubt as to Plaintiff's disability.

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 9 is GRANTED.   The Commissioner's final decision is REVERSED and REMANDED for immediate calculation and payment of benefits pursuant to sentence four of 42 U.S.C. § 405(g).  The Court DIRECTS the Clerk of this Court to enter judgment in favor of Plaintiff and close this case accordingly.

DATED this 4th day of March 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[178] *Garrison*, 759 F.3d at 1021.